# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

EILLEEN Y. GALLEGO-PAGAN

Plaintiff

vs.

THE DEPARTMENT OF CORRECTIONS
AND REHABILITATION (DCR)
MARITZA RODRÍGUEZ-RODRÍGUEZ
WILFREDO CRUZ VELÁZQUEZ
BRENDA ROSA-GARCÍA                    **CIVIL NO.: 23-1272**
MILDRED PÉREZ-SANTOS
MARISOL LÓPEZ-TORRES
IDELFONSO MORALES-SANTIAGO
ZULMA MATIAS-OTERO
CRISTIAN MALDONADO
UNKNOWN INSURANCE COMPANY ABC
UNKNOWN INSURANCE COMPANY XYZ

Defendants

_____/

## COMPLAINT

TO THE HONORABLE COURT:

Plaintiff, Eilleen Gallego-Pagán, through the undersigned legal counsel,

respectfully states, alleges, and prays as follows:

1. This action is brought to remedy discrimination based on sex in the terms,

conditions, and privileges of employment protected under Title VII, all in violation of Title

VII of the Civil Rights Act of 1964, 42 U.S.C. section 2000e et seq. and the Civil Rights

Act of 1991, 42 U.S.C. section 1981a, and under 42 U.S.C. § 12101 et seq.

2. Jurisdiction is invoked pursuant to 28 U.S.C. section 1343(4) and 42 U.S.C.

section 2000e-5(f), and a right-to-sue letter was issued by the Equal Employment Opportunity Commission (EEOC) on March 2nd, 2023, a true and accurate copy of which is attached hereto as **Exhibit 1.**

3. Declaratory, injunctive, legal, and equitable reliefs sought pursuant to 28 U.S.C. sections 2201, 2202, and 42 U.S.C. section 2000e-5(g). Compensatory and punitive damages are sought pursuant to 42 U.S.C. section 1981a.

4. Plaintiff invokes the pendent jurisdiction of this Court to adjudicate claims arising out of state law, to wit:

a) Law No. 100 of June 30, 1959, as amended, better known as the Law Against Discrimination in Employment. 29 L.P.R.A. sec. 146, et. seq.

b) Law number 69 of July 6, 1985; Article 1536, 1538, of the Civil Code of Puerto Rico, 31 L.P.R.A. § 10801 et seq.

c) Law 44 of July 2, 1985, better known as the Law Against Employment Discrimination Towards People with Disabilities, 1 LPRA §§ 501-511(b) (2008).

d) Law to Prohibit and Prevent Workplace Harassment in Puerto Rico, 29 LPRA sec. 3111, et seq.

e)  Law No. 115 of December 20, 1991, 29 LPRA §194-194b (2017), the law against Unjust Dismissal or Retaliation against any Employee for Testifying before a Legislative, Administrative, or Judicial Forum.

5. Costs and attorney's fees may be awarded pursuant to 42 U.S.C. 2000e-5(k) and Fed R Civ P 54.

6. This action properly lies in the United States District Court of Puerto Rico, pursuant to 29 U.S.C. section 193l (b), because the claim arose in this judicial district,

2

and pursuant to 42 U.S.C. section 2000e- 5(1)(3), because the unlawful employment practice was committed in this judicial district.

## PARTIES

7.  Plaintiff, Eilleen Gallego Pagán, is domiciled and resides in the municipality of Ponce. She is of legal age, single, and a property owner with a Social Security number xxx-xx-2747.

8.  The defendant, the Department of Correction and Rehabilitation (DCR), is an agency organized under the laws of the Commonwealth of Puerto Rico with headquarters in San Juan, Puerto Rico. The lawsuit is directed at DSR in its personal and/or official capacity.

9. Co-defendant, Maritza Rodríguez-Rodríguez, is a category 3 supervisor at the DCR. At all relevant times of this cause of action, she was and is a supervisor with the defendant DCR. Ms. Rodríguez is being sued in her personal and official capacity. She currently works at the Detention and Social Treatment Center, Ponce, (hereinafter referred to as "Rodríguez").

10.  Co-defendant, Wilfredo Cruz Velázquez, is a category 3 supervisor at the DCR. At all relevant times of this cause of action, he was and is a supervisor with the defendant DCR. Mr. Cruz Velázquez is being sued in his personal and official capacity. He currently works at the Detention and Social Treatment Center, Ponce, Puerto Rico.

11. Co-defendant, Brenda Rosa-García, is a category 4 supervisor at the DCR. At all relevant times of this cause of action, she was and is a supervisor with the defendant DCR. Ms. Rosa-García is being sued in her personal and official capacity. She currently works at the Detention and Social Treatment Center, Ponce, Puerto Rico.

3

12. Co-defendant, Mildred Pérez-Santos, is a category 4 supervisor at the DCR. At all relevant times of this cause of action, she was and is a supervisor with the defendant DCR. Ms. Pérez-Santos is being sued in her personal and official capacity. She currently works at the Detention and Social Treatment Center, Villalba, Puerto Rico.

13. Co-defendant, Marisol López-Torres, is the institutional chief of the Detention and Social Treatment Center; Ponce, Puerto Rico. At all relevant times of this cause of action, she was and is a supervisor with the defendant DCR. Ms. López-Torres is being sued in her personal and official capacity.

14. Co-defendant, Ildefonso Morales-Santiago, was and is a supervisor with the defendant DCR. At all relevant times of this cause of action, he was a supervisor with DCR. He currently works and serves as a sergeant and/or lieutenant at the Las Cucharas correctional complex in Ponce, Puerto Rico. Mr. Morales-Santiago is being sued in his personal and official capacity.

15. Co-defendant, Zulma Matias-Otero, is the Coordinator of Security for Juvenile Institutions at the DCR. At all relevant times of this cause of action, she was the Coordinator of Security for Juvenile Institutions at the DCR.  Ms. Matias-Otero is being sued in her personal and official capacity.

16. Co-defendant, Cristian Maldonado, was and is an interim juvenile services officer. At all relevant times of this cause of action, he was an officer with DC. He is currently assigned, on an interim basis, to the transportation area of the DCR.

17.  Defendants, ABC and XYZ Insurance company are natural or juridical persons whose identity is unknown, and that upon information and belief have issued an insurance policy that covers the claims asserted against the

4

defendants in the captioned complaint, and for which reason are liable pursuant to the terms and conditions of the policy, to the Plaintiff. At the present time, the identity of the defendant(s) is unknown, and the complaint will be amended, once their identities are known, to include them in this cause of action.

### ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

18. Plaintiff, Eilleen Y. Gallego Pagán, started working in May 2003 with the Juvenile Institution Administration (now DCR).

19. The Plaintiff held the position of Juvenile Service Officer (1) until February 2012.

20. The Plaintiff was promoted to Juvenile Service Officer (2) in February 2012.

21. The Plaintiff's duties as a Juvenile Service Officer included guarding, supervising, and providing all necessary services to the minors detained at the institution.

22. The services that Plaintiff provided to the detained minors included transportation, food, medical services, education services, mental health, and social work.

23. The Plaintiff also provided security service to the civilian personnel who provided services to detained minors.

24. In 2003, Plaintiff worked at the Salinas Institution for minors.

25. In 2009, the Plaintiff was transferred to CTS ("Centro de Tratamiento Trabajo Social, Ponce, niñas") Social Treatment Center for minor girls, in Ponce, P.R.

26. In March 2014, Plaintiff started providing services on a program for the prevention of juvenile delinquency.

5

27. The program for the prevention of juvenile delinquency included services like transportation to educational facilities for detained minors.

28. In 2017, Plaintiff started working as a Security Officer at the Ponce Multi-Family (Ponce-Victoria location) located at Victoria Street.

29.  At the Ponce-Victoria location where Plaintiff worked, there were three offices: Arrest Offices, Internal Affairs Offices, and Multi-Family Offices.

30. The Plaintiff's work schedule was from Monday to Friday, from 6:00 am to 2:00 pm. The Plaintiff had Saturdays and Sundays off.

31. In March 2019, the plaintiff was transferred from Ponce-Victoria to CTS-Ponce, "Social Treatment Center" for males, located on Rd. 14, in Ponce.

32. The plaintiff's duties involved moving detained minors from the modules to different offices which provided services to the minors, such as a psychologist, psychiatrist, control substances sections, therapeutic, and manual services.

33. The plaintiff worked from Monday to Friday, 6:00 am - 2:00 pm, with Saturdays and Sundays off.

34.  **On March 25th, 2019**, the plaintiff and Officer Rumualdo Morales were summoned to meet with Mr. Julio Rosado Loyola, Supervisor (4).

35. During the meeting, Mr. Rosado-Oyola informed the plaintiff that by orders of Mr. Raul Cepeda, Regional Director of the Bureau of Juvenile Services, they were to be transferred to "USMIC" (Correctional Institutional Mental Health Unit), a section within the CTS.

36. The plaintiff's duties at "USMIC" were to accompany detained minors to different health professionals and bring them back to their modules.

6

**COMPLAINT**

37.  The plaintiff's work schedule remained the same: Monday to Friday, 6:00 am - 2:00 pm, with weekends off.

38.  The plaintiff was instructed to provide exclusive duties to "USMIC".

39. However, the plaintiff was also assigned other duties in other areas despite the instructions given to work exclusively for "USMIC".

40. The plaintiff was assigned additional tasks, not related to "USMIC", even when there were other people available in the area.

41. Rumualdo Morales, the fellow officer, was never assigned or obligated to work in other areas.

42. The plaintiff felt discriminated against based on their gender.

43. The plaintiff felt discriminated against, harassed, and retaliated by codefendants, supervisors Maritza Rodriguez-Rodriguez, Wilfredo Cruz-Velazquez, Brenda Rosa Garcia, Mildred Perez-Santos, Marisol Lopez Torres, and Ildefonso Morales Santiago.

44. The plaintiff was assigned to two positions at the same time on several occasions, for example, USMIC and Medical area, despite there already being an Officer assigned to those areas according to the roster.

45. The plaintiff was not supposed to be required to relieve two spots at once as their duties were assigned in the master roster.

46. On one occasion, the plaintiff was assigned by Supervisor Maritza Rodriguez to relieve another security officer at the main gate of CTS Ponce.

47. The plaintiff was not armed, a requirement for the main gate position, at the time of this assignment.

7

48. The plaintiff informed Supervisor Maritza Rodriguez that their duties were at "USMIC".

49. Despite this, Supervisor Maritza Rodriguez indicated that she would assign another officer to "USMIC".

50.  On that particular day (paragraph 48), the plaintiff was not relieved of said main duty, at the main gate of CTS Ponce until 10:00 pm.

51. The plaintiff explained to Supervisor Maritza Rodriguez-Rodriguez that there were other armed officers who could provide armed services at the main gate, but my comments were ignored.

52. Plaintiff was assigned to the main gate; Supervisor Maritza Rodriguez-Rodriguez did not arrange for the plaintiff's relief at 2:00 pm.

53. The plaintiff considered the action of Supervisor Maritza Rodriguez-Rodriguez as willful harassment.

54. Following this incident, the plaintiff returned to her official duties at "USMIC".

55. Despite this, Supervisors Maritza Rodriguez-Rodriguez and Wilfredo Cruz-Velazquez attempted to assign the plaintiff to other areas, contrary to the order of Raul Cepeda, Regional Director of the Juvenile Administration, which assigned the plaintiff and Rumualdo Morales to provide exclusive services at "USMIC".

56. Supervisors Maritza Rodriguez-Rodriguez, Idelfonso Morales-Santiago, and Brenda Rosa-Garcia knew that the plaintiff's duty was to provide exclusive services at "USMIC".

57. These supervisors allegedly discriminated against the plaintiff based on gender, as Rumualdo Morales, the plaintiff's partner at "USMIC", was never assigned to

8

any duties outside of "USMIC".

58. **On July 15th, 2020**, after completing her duties at "USMIC", the plaintiff was summoned to a meeting in the office of Supervisor Mildred Perez-Santos.

59. Also present at this meeting were Maritza Rodriguez-Rodriguez, Idelfonso Morales-Santiago, Marisol Lopez-Torres (Institution Director), and Secretary Ana Torres, who was taking minutes of the meeting.

60. The plaintiff alleges that due process was not followed in this meeting since the Federation delegate, Mr. Pablo Miranda, was absent.

61. When the plaintiff asked about the delegate's absence, Marisol Lopez-Torres responded that the meeting had already started, and the delegate could not be sent for at that time.

62. During this meeting, Defendants yelled, insulted, humiliated, mistreated, and intimidated the plaintiff, further criticizing her uniform.

63. The plaintiff alleges that Supervisors Maritza Rodriguez-Rodriguez and Wilfredo Cruz-Velazquez conspired and made several unfair and untrue reports against her, allegedly for insubordination and other matters.

64. The plaintiff alleges that defendants Mildred Perez-Santos, Sergeant Idelfonso Morales-Santiago (Chief of Security), and Mrs. Marisol Lopez-Torres (Institutional Chief Director) did not follow due process in investigating these reports.

65. These individuals allegedly accepted these reports and gave full credibility to them, despite the plaintiff asserting that they were false and made in bad faith.

66. On **July 17th, 2020**, the plaintiff filed a complaint against Supervisor Wilfredo Cruz-Velazquez because he denied the plaintiff permission to take a 15-minute lunch

9

break, which the plaintiff claims were a violation of their rights under the employee-federation agreement.

67. The plaintiff claims she was a victim of discriminatory behavior by all defendants.

68. On **July 22nd, 2020**, the plaintiff met with Leticia Colon Perez, the Ethics Coordinator of CTS Ponce, and other officers of the Ethics Division of the Department of Corrections.

69. During this meeting, the plaintiff submitted a complaint about alleged discrimination, harassment, persecution, reprisals, and a hostile work environment.

70. On **July 15th, 2020,** plaintiff was summoned to meet with codefendants, Defendants, Mildred Perez-Santos, Idelfonso Morales-Santiago, Marisol Lopez-Torres, and Wilfredo Cruz-Velázquez. In that meeting, Mildred Pérez stated that the plaintiff had incurred in insubordination with the different supervisors, an allegation which the plaintiff denied.

71. On **July 29th, 2020**, after more than 14 months of the plaintiff doing an excellent job in the USMIC area, and giving the extra mile at work, Defendants, Mildred Perez-Santos, Idelfonso Morales-Santiago, Marisol Lopez-Torres, and Wilfredo Cruz-Velazquez, intentionally, willfully, and abusively, **removed** Plaintiff from the USMIC area, and placed a male officer, Pablo Miranda.

72. On the same day, **July 29th, 2020**, the plaintiff alleges that her supervisor, Defendant Mildred Perez-Santos, disclosed sensitive and confidential health information without the plaintiff's authorization, violating HIPAA law.

10

73. Also, on that same date, **July 29th, 2020,** the plaintiff states that Defendant Perez-Santos inaccurately described her as having a mental breakdown.

74.  The plaintiff further alleges that Defendant Perez-Santos made derogatory and defamatory comments about her, suggesting she was unfit for their role due to their mental health. Further, falsely stated that Plaintiff was in the medical area, totally out of control, sitting on the floor, crying.

75. Defendant Perez-Santos stated that she couldn't have a decompensated. person (the plaintiff) doing underage youth movements. Further, stating that **Plaintiff was recently hospitalized for mental disorders.** Also, Defendant stated that Plaintiff did not want to move from the premises, and Defendant could not accept this situation, Defendant needed Plaintiff to leave or have a relative pick her up.

76. The plaintiff alleges that these derogatory statements were made to her friend and colleague, Officer Rosa Silva-Velez.

77. Rosa Silva-Velez wrote a letter recounting what she heard during the phone conversation with Mildred Perez.

78.  As a result of what happened to the plaintiff on **July 29, 2020**, and other actions by the defendants, on July 30th, 2020, Plaintiff visited Dr. Fabian Lugo, and after evaluating her, because she was emotionally affected, was put on rest till August 17 and extending said rest period until August 31, 2020. On September 1, 2020, the plaintiff was discharged by Dr. Fabio Lugo.

79. On **September 2, 2020**, the plaintiff reported for work at the juvenile detention center. That day co-defendant, Wilfredo Cruz Velázquez, instructed plaintiff to relieve the duty officer in prison section number (2). Plaintiff informed the co-defendant

11

that according to protocol, she could not do the work shift relief until the Human Resources officer of the area authorized the same.

80. Co-defendant, Wilfredo Cruz Velázquez, became annoyed upon hearing what the plaintiff said and began to yell and mistreat her in front of other coworkers, demanding that she immediately relieve the officer at the section. The plaintiff refused to relieve the officer until the Human Resources officer arrived and authorized her to return to work.

81. The plaintiff waited for the Human Resources officer, Carlos Vélez, to arrive early in the morning and despite his arriving at his work area, he did not meet with the plaintiff but did communicate with the co-defendant Wilfredo Cruz Velázquez by phone.

82. Later at 10:07 am, the plaintiff met with co-defendants Mildred Pérez Santos, Marisol López Torres, and the federation delegate, Pablo Miranda.

83. At that meeting, the plaintiff was informed, again, and specifically by Director, Marisol López Torres, that the plaintiff had been removed from USMIC. The plaintiff asked for the reasons for this transfer, but none was given.

84. The plaintiff later met with the Human Resources officer, Carlos Vélez, and presented her documents to him in order to be able to return to work.  At that meeting, the plaintiff requested a meeting with Mrs. Ivette Rivera Zayas, Director of Human Resources at the DCR, to explain everything that happened to her, and the mistreatment received. The plaintiff never received a response to her meeting request.

85.  During the month of September 2020, the plaintiff suffered other incidents, including biological events which affected her duties and performance in her shift.

86. **On October 10th, 2020**, Dr. Fabio Lugo evaluated Plaintiff and placed Plaintiff

12

on medical leave till October 20th, 2020.

87. On **October 23rd, 2020**, Dr. José Morales placed the plaintiff on medical leave till November 5th, 2020.

88. On **November 5th, 2020**, Dr. Monica Portalatin placed the plaintiff on medical leave till November 10th, 2020.

89. On **November 13, 2020**, Dr. Fabio Lugo placed the plaintiff on medical leave till December 11th, 2020; then from December 11th, 2020, till January 11th, 2021.

90. On January 11th, 2021, Dr. Fabio Lugo placed the plaintiff on medical leave till March 31st, 2021.

91. On **March 5th, 2021**, at 9:15 am, the plaintiff received a letter from the Ethics Division, signed by Mrs. Irma Padilla Ortiz, summarily dismissing her complaint.

92. Plaintiff asserts that the Ethics Division of Defendant DCR conducted **no** thorough investigation into her allegations of discrimination

93. On **March 31st, 2021**, Dr. José Morales placed the plaintiff on medical leave till April 4th, 2021.

94. From **April 7th, 2021,** till April 12th, 2021, Dr. Monica Portalatin placed the plaintiff on medical leave.

95. On **April 12th, 2021**, Plaintiff returned to work at the detention center for juveniles.

96. On **April 21st, 2021**, Plaintiff returned to work at the Multifamily Division DCR and Zulma Matías was Plaintiff's immediate supervisor.

97. On **April 28, 2021**, co-defendant Zulma Matías met with Plaintiff to inquire and tell Plaintiff what her duties at the Multifamily division in Ponce would be.

13

98. On **July 23rd, 2021**, co-defendant Matias summoned the plaintiff in order to discuss complaints that the plaintiff has been seen asleep in her post during working hours. Plaintiff denied the accusation and no proof was provided.

99. On **August 2021,** co-defendant Matias met with the Plaintiff and told her she would be transferred to the Tower section of the juvenile detention center.

100. Plaintiff was told that the gates she was supervising had to be locked at all times unless an authorized vehicle was allowed entrance.

101. On various occasions, the plaintiff found the gates open, with no explanations, and so informed her supervisors.

102. From September 16th, 2021, till September 20th, 2021, Dr. José Lucca placed Plaintiff on medical leave.

103. On September 21st, 2021, the plaintiff returned to work till Oct.14th, 2020.

104. From October 14th, 2021, till November 8th, 2021, Dr. Fabio Lugo placed the defendant on medical leave.

105. On **November 9th, 2021**, Plaintiff returned to work at the tower.

106. During all these times the gates were found open with no explanation which caused the plaintiff angst and anxiety, since no one explained why these events were happening, fearing that she be accused of leaving the gates open and allowing juveniles to escape.

107. On **May 6th, 2022,** Dr. Fabio Lugo, placed the plaintiff on medical leave till June 3rd, 2022, and later extended till August 7th, 2022.

108. **On August 8th, 2022**, the plaintiff returned to work at the Tower Section after she got authorization from Human Resources.

14

109. After Plaintiff returned to the Tower Section, the transport unit of the DCR was also located in the Tower Section, sharing her space with said Transport unit.

110. From **October 13th, till October 21, 2022,** the plaintiff was sick with Co-Vid.

111. After **October 21st, 2023**, Plaintiff returned to work.

112. On **November 30th, 2022,** Plaintiff filed a complaint with the Human Resources Department, specifically Carlos Velez stating that in the Tower, the transport officials were engaging in sexual foul language and intimidation conduct, abusive work-environment-harassment against her person.

113. Also, the plaintiff included in the complaint that on November 30th, 2022, co-defendant, Cristian Maldonado told Plaintiff that under instructions of Zulma Matías, the plaintiff was to retire from her work area, that he was going to close the gates, the doors, turn off the air conditioner, and for the plaintiff to visit a doctor. Plaintiff told him she was not sick.

114. Mr. Kelvin Merced referred the plaintiff's complaint to Defendant's DCR's Central Office.

115. On **December 7th, 2022**, Plaintiff was interviewed by Mrs. Elsa Poventud, from the Labor Relations Division of DCR.

116. On **December 13th, 2022**, Plaintiff filed with the Federation a complaint with the Federation delegate, Juan Montero, stating that Christian Maldonado, was discriminating against Plaintiff and creating an abusive hostile work environment. The federation communicated this complaint to the DCR.

117**. On December 19th,2023**, and December 20th, 2022, Plaintiff filed two additional complaints with the federation Juan Montero. Plaintiff gave these complaints

15

to DCR's Human Resources Official, Mr. Carlos Velez.

118. On January 12th, 2023, Plaintiff was interviewed, again, by Mrs. Poventud from the Labor Relations Division of DCR to discuss the Sexual Harassment incidents.

119. On January 18th, 2023, Plaintiff was interviewed by Mrs. Eugenia Mejia Medina, Coordinator of Abusive Hostile Work Environment. In that interview, Plaintiff submitted and stated her complaint regarding the Hostile Work Environment suffered during the month of November and December 2022.

120. The hostile work environment continues up to the present. Plaintiff fears for her life.

121. Defendant DCR has done nothing to eliminate the hostile work environment and discrimination.

122. Defendants have intentionally created a hostile and discriminatory work environment.

**FIRST CAUSE OF ACTION**

123. Plaintiff repeats and realleges each and every allegation previously mentioned in this complaint.

124. Defendants have discriminated against Plaintiffs in the terms and conditions of her employment on the basis of her sex in violation of Title VII.

125. As a result of the aforesaid discrimination, Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages.

**SECOND CAUSE OF ACTION**

126. Plaintiff repeats and re-alleges each and every allegation previously stated herein.

16

127. Defendants, intentionally, willfully, and maliciously have violated and continue to violate the American Disabilities Act, **42 U.S.C. § 12101 et seq**., and **42 U.S.C. § 12111(5)** and are liable to plaintiffs under said law.

Defendants, also, **retaliated** against the plaintiff, Eilleen Y Gallego-Pagán in violation of **42 U.S.C. § 12203**, and are liable to the plaintiff under said law.

## THIRD CAUSE OF ACTION

128. Plaintiff repeats and re-alleges each and every allegation previously stated herein.

129. The above acts and practices of the Defendants constitute unlawful discrimination of employment practices within the meaning of Title 29, section 146., P.R.L.A., Law 100, and Law number 69 of July 6, 1985.

130. As a result of Defendant's discriminatory acts, Plaintiff has suffered and will continue to suffer pain and suffering, humiliation, and emotional distress. State relief under the previously mentioned statutes is, also, requested.

## FOURTH CAUSE OF ACTION

131. Plaintiffs, repeat and re-allege each and every allegation previously stated herein.

132. The above acts and practices of the defendants constitute unlawful discriminatory employment practices within the meaning of the Commonwealth of Puerto Rico's, State Law 44, **1 P.R.L.A. § 501 et seq.**

133. The remedies afforded by Law 100, **Title 29 P.R.L.A. §146, et seq.** are applicable to State Law 44. and are hereby incorporated.

134.  Defendants, intentionally, willfully, and maliciously have discriminated

17

against the plaintiff, Eilleen Y. Gallego-Pagán, and have violated and continue to violate Puerto Rico's State Law 44, **1 P.R.L.A. § 501 et seq.**

135. As a result of Defendant's discriminatory acts, the plaintiff, Eilleen Y. Gallego-Pagán- Gallego, suffered and will continue to suffer pain and suffering, depression, humiliation, and emotional distress. State relief under the previously mentioned statutes is also, requested.

**FIFTH CAUSE OF ACTION**

136. Plaintiff repeats and re-alleges each and every allegation previously stated herein.

137. The above acts and practices of Defendants constitute unlawful discriminatory employment practices within the meaning of the Commonwealth of Puerto Rico's Law to Prohibit and Prevent Workplace Harassment in Puerto Rico, 29 LPRA sec. 3111, et seq.

138.  Defendants, intentionally, willfully, and maliciously have discriminated against plaintiff, Eilleen Y. Gallego-Pagán, and have violated and continue to violate Puerto Rico's State 29 LPRA sec. 3111, et seq.

139.  As a result of Defendant's workplace harassment plaintiff has suffered and will continue to suffer pain and suffering, depression, humiliation, and emotional distress. State relief under this and previously mentioned statutes is, also, requested.

**SIXTH CAUSE OF ACTION**

140. Plaintiff repeats and re-alleges each and every allegation previously stated herein.

141. The above acts and practices of Defendants constitute unlawful

18

discriminatory employment practices within the meaning of the Commonwealth of Puerto Rico's Law No. 115 of December 20, 1991, 29 LPRA §194-194b (2017), the law against Unjust Dismissal or Retaliation against any Employee for Testifying before a Legislative, Administrative, or Judicial Forum.

142. As a result of Defendant's **retaliation,** plaintiff, Eilleen Y. Gallego-Pagán has suffered and will continue to suffer pain and suffering, depression, humiliation, and emotional distress.

143. State relief under this and previously mentioned statutes is, also, requested.

## SEVENTH CAUSE OF ACTION

144. Plaintiff repeats and re-alleges each and every allegation previously stated herein.

145. The above acts and practices of Defendants are actionable under the general tort law of Puerto Rico to wit: Article 1536, 1538, of the Civil Code of Puerto Rico, 31 L.P.R.A. § 10801 et seq.

146. As a result of Defendant's culpable and negligent acts against the plaintiff, Eilleen Y. Gallego-Pagán has suffered and will continue to suffer pain and suffering, depression, humiliation, and emotional distress.

147. State relief under this and the previously mentioned tort law is, also, requested.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff requests that defendants be found liable pursuant to the above-mentioned laws, and that judgment be entered against the defendants, in the

19

following amounts:

1. Compensatory damages for the plaintiff, Eilleen Y. Gallego Pagán in the amount of $2,000,000.00.

2. Compensatory damages pursuant to Federal Law.

4. Compensatory damages pursuant to State Law.

5. Attorney's fees, costs, interests and expenses, and such other relief as the Honorable Court deems just and appropriate.

**Plaintiffs request Jury Trial on all issues pursuant to law**

Respectfully, submitted, in San Juan, Puerto Rico this May 29th, 2023.

**S/** Erick Morales-Pérez
USDC-PR 203211

ERICK MORALES-PEREZ, ESQ
ATTORNEY NO. 203211
P.O. BOX 10409
SAN JUAN, PUERTO RICO 00922-0409
TEL. (787) 605-8000
EMAIL: ekmorpr@yahoo.com

20