**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

EILLEEN Y. GALLEGO-PAGÁN,

        **Plaintiff,**

        v.

DEPARTMENT OF CORRECTIONS AND
REHABILITATION, et al.

        **Defendants.**

**CIVIL NO. 23-1272 (RAM)**

## OPINION AND ORDER

RAUL M. ARIAS-MARXUACH, United States District Judge

    Pending before the Court is Defendants' *Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)* ("*Motion to Dismiss*") (Docket No. 21). For the reasons outlined below, the Court hereby **GRANTS** Defendants' *Motion to Dismiss*.

### I.    BACKGROUND

    On May 29, 2023, Plaintiff Eilleen Gallego-Pagán ("Plaintiff" or "Ms. Gallego") filed a *Complaint* against her employer, the Department of Corrections and Rehabilitation (the "DCR"), as well as DCR supervisors and employees (the "Individual Defendants")[1], (collectively "Defendants"). (Docket No. 1). Plaintiff alleges

---

[1] The following are the names and titles of the Individual Defendants, per the allegations of the *Complaint*: Maritza Rodríguez-Rodríguez (DCR supervisor); Wilfredo Cruz Velázquez (DCR supervisor); Brenda Rosa-García (DCR supervisor); Mildred Pérez-Santos (DCR supervisor); Marisol López-Torres (the DCR institutional chief of the Detention and Social Treatment Center, Ponce, Puerto Rico); Ildefonso Morales-Santiago (DCR supervisor); Zulma Matias-Otero (DCR Coordinator of Security for Juvenile Institutions); and Cristian Maldonado (DCR interim juvenile services officer). (Docket No. 1 ¶¶ 9-16).

that she was discriminated and retaliated against on the basis of sex and disability in violation of Title VII, 42 U.S.C. §§ 2000e, *et seq.*; the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, *et seq.*; and 42 U.S.C. § 1981a. Id. Ms. Gallego also asserts that Defendants violated the following Puerto Rico statutes: Law 44, P.R. Laws Ann. tit. 1, §§ 501, *et seq.*; Law 69, P.R. Laws Ann. tit. 29, §§ 1321-1341; Law 90, P.R. Laws Ann. tit. 29, §§ 3111, *et seq.*; Law 100, P.R. Laws Ann. tit. 29, §§ 146, *et seq.*; Law 115, P.R. Laws Ann. tit 29, §§ 194, *et seq.*; and Articles 1536 and 1538 of the Puerto Rico Civil Code. Id.

On September 26, 2023, Defendants filed the *Motion to Dismiss* seeking dismissal of the *Complaint* in its entirety. (Docket No. 21). Therein, Defendants argue that Plaintiff failed to exhaust administrative remedies as to her Title VII claims because the right to sue letter from the Equal Employment Opportunity Commission ("EEOC") that Plaintiff included as an attachment to her complaint only referenced her disability discrimination claims. Id. at 4-5. Additionally, Defendants contend that: (a) the sex discrimination claims under Title VII and Law 69 are time-barred; (b) Plaintiff failed to plead a prima facie ADA claim; (c) there is no individual liability under Title VII, the ADA, and Puerto Rico Laws 44, 90, 100 and 115; (d) monetary relief against the Commonwealth of Puerto Rico is barred by the Eleventh Amendment; and (e) Plaintiff is not entitled to damages pursuant

to Articles 1536 and 1538 of the Puerto Rico Civil Code. Id. at 5-13.

Plaintiff filed a *Response in Opposition* on October 12, 2023 "yielding" to various arguments raised by Defendants. (Docket No. 23). Notably, Ms. Gallego voluntarily dismissed the totality of her claims for disability discrimination under the ADA and Law 44. Id. at 8. Plaintiff also conceded that there is no individual liability under Title VII, Law 90, and Law 115, and that the Individual Defendants are entitled to Eleventh Amendment immunity in their official capacity. Id. at 8, 13. Lastly, she agreed that Articles 1536 and 1538 of the Puerto Rico Civil Code are currently inapplicable. Id. at 8.

As to her sex discrimination claims under federal and Puerto Rico law, Plaintiff argues that she exhausted administrative remedies and that said claims are not time-barred. Id. at 5-8. In support, Ms. Gallego submitted the Charge of Discrimination she filed before the EEOC (the "EEOC Charge") in which she marked sex discrimination as one of the foundations of her claim. (Docket No. 23-1).

On October 12, 2023, Defendants filed a *Reply* acknowledging that Plaintiff evidenced that she had filed an EEOC Charge for sex discrimination but asserting that the facts alleged therein were not sufficiently related to the allegations of the *Complaint*.

(Docket No. 29). Defendants also reiterated their argument that Plaintiff's sexual discrimination claims are time-barred.

## II.  APPLICABLE LAW

### A. The Motion to Dismiss Standard

Fed. R. Civ. P. 12(b)(6) allows a complaint to be dismissed for "failure to state a claim upon which relief can be granted." When ruling on a motion to dismiss under this rule, courts must determine whether "*all* the facts alleged [in the complaint], when viewed in the light most favorable to the plaintiffs, render the plaintiff's entitlement to relief plausible." Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 14 (1st Cir. 2011) (emphasis in original). This requires treating "any non-conclusory factual allegations in the complaint as true." Nieto-Vicenty v. Valledor, 984 F. Supp. 2d 17, 20 (D.P.R. 2013). Courts may also consider: "(a) 'implications from documents' attached to or fairly 'incorporated into the complaint,' (b) 'facts' susceptible to 'judicial notice,' and (c) 'concessions' in plaintiff's 'response to the motion to dismiss.'" Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55–56 (1st Cir. 2012) (quoting Arturet-Vélez v. R.J. Reynolds Tobacco Co., 429 F.3d 10, 13 n.2 (1st Cir. 2005)).

### B. Title VII and Sex Based Discrimination

Title VII makes it unlawful for an employer to discharge or otherwise discriminate against any individual with respect to

their "compensation, terms, conditions or privileges of employment" because of an individual's sex. 42 U.S.C. § 2000e-2. "To state a claim to relief, a complaint asserting sex discrimination must plausibly allege that the plaintiff experienced an adverse employment action taken on the basis of her gender." Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir. 2012) (citation omitted). "An adverse employment action is one that affect[s] employment or alter[s] the conditions of the workplace, and typically involves discrete changes in the terms of employment, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits." Morales-Vallellanes v. Potter, 605 F.3d 27, 35 (1st Cir. 2010) (quotations and citations omitted).

Furthermore, it is well established that sexual harassment, in the form of a hostile work environment, can constitute sex discrimination. *See* Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 751-54 (1998). "Title VII . . . allows a plaintiff to prove unlawful discrimination by showing that the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." O'Rourke v. City of Providence, 235 F.3d 713, 728 (1st Cir. 2001) (internal quotation marks omitted). In other words, an employer

can be held liable if they fail to provide a harassment free workplace by "committing or tolerating sexual harassment against an employee, . . . effectively alter[ing] the terms or conditions of the victim's job." Medina-Rivera v. MVM, Inc., 713 F.3d 132, 136-37 (1st Cir. 2013).

To succeed in a hostile work environment claim based on sexual harassment, a plaintiff must establish the following six (6) elements:

> (1) that she (or he) is a member of a protected class; (2) that she was subjected to unwelcome sexual harassment; (3) that the harassment was based upon sex; (4) that the harassment was sufficiently severe or pervasive so as to alter the conditions of plaintiff's employment and create an abusive work environment; (5) that sexually objectionable conduct was both objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive and the victim in fact did perceive it to be so; and (6) that some basis for employer liability has been established.

O'Rourke, 235 F.3d at 728 (citing Faragher v. City of Boca Raton, 524 U.S. 775, 787-89 (1998); Harris v. Forklift Sys., Inc., 510 U.S. 17, 20-23 (1993); Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 65-73 (1986)). Applying this hostile work environment test "requires an assessment of the totality of the circumstances," such as the severity and frequency of the conduct; "whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an

employee's work performance." <u>Valentin-Almeyda v. Mun. Of Aguadilla</u>, 447 F.3d 85, 94 (1st Cir. 2006) (quotations omitted).

**C. Timeliness and Exhausting Administrative Remedies**

Prior to proceeding under Title VII in federal court, a plaintiff must exhaust administrative remedies, including EEOC procedures. *See* <u>Frederique-Alexandre v. Dep't of Nat. & Env't Res. P.R.</u>, 478 F.3d 433, 440 (1st Cir. 2007) (citing <u>Lebrón-Ríos v. U.S. Marshal Servs.</u>, 341 F.3d 7, 13 (1st Cir. 2003)). Specifically, a plaintiff must first file an administrative charge with EEOC within either 180 or 300 days after the alleged Title VII violation occurred. <u>Frederique-Alexandre</u>, 478 F.3d at 437. In Puerto Rico, a deferral jurisdiction, the charge must be filed within 300 days. <u>Id.</u> This timeliness requirement is "mandatory" and failure to comply "means a potential plaintiff 'lose[s] the ability to recover for [the alleged discrimination].'" <u>Id.</u> (quoting <u>Nat'l R.R. Passenger Corp. v. Morgan</u>, 536 U.S. 101, 109 (2002)). Therefore, if a plaintiff fails to file an EEOC charge within 300 days, their "discrete discriminatory acts will be time-barred, and thus not actionable, even if they are related to acts alleged in timely filed charges." <u>Ayala v. Shinseki</u>, 780 F.3d 52, 56–57 (1st Cir. 2015) (citing <u>Morgan</u>*,* 536 U.S. at 113).

After filing the administrative charge, a plaintiff may bring suit in federal court "only if the EEOC dismisses the administrative charge, or if it does not bring civil suit or enter

into a conciliation agreement within 180 days of the filing of the administrative charge." <u>Franceschi v. U.S. Dep't of Veterans Affs.</u>, 514 F.3d 81, 85 (1st Cir. 2008) (citing 42 U.S.C. § 2000e-5(f)(1)). The employee must wait for a right-to-sue letter from the EEOC, after which he will have 90 days to commence suit in federal court. <u>Id.</u> (citations omitted).

Nevertheless, "[c]ourts have recognized a narrow exception to the limitations period via the 'continuing violation doctrine.'" <u>Ayala</u>, 780 F.3d at 57. Pursuant to the continuing violation doctrine, "a plaintiff may obtain recovery for discriminatory acts that otherwise would be time-barred so long as a related act fell within the limitations period." <u>Tobin v. Liberty Mut. Ins. Co.</u>, 553 F.3d 121, 130 (1st Cir. 2009). Importantly, "this doctrine does not apply to 'discrete acts' of alleged discrimination that occur on a 'particular day.'" <u>Ayala</u>, 780 F.3d at 57. Rather, the continuing violation doctrine only applies "to claims that cannot be said to occur on a particular day and that by their very nature require repeated conduct to establish an actionable claim, such as hostile work environment claims." <u>Id.</u> In other words, "the continuing violation doctrine simply 'allow[s] suit to be delayed until a series of wrongful acts blossoms into an injury on which suit can be brought.'" <u>Id.</u> (quoting <u>Morales-Tañón v. P.R. Elec. Power Auth.</u>, 524 F.3d 15, 19 (1st Cir.2008)). Therefore, "component acts of a hostile work environment claim that occur outside the

filing period may be considered for purposes of determining liability." <u>Tobin</u>, 553 F.3d at 130 (quotations omitted).

### III. RELEVANT FACTS[2]

#### A. Ms. Gallego's Employment at the DCR

1. In May 2003, Plaintiff started working as a Juvenile Service Officer (1) at the DCR Salinas Institution for minors.[3] (Docket No. 1 ¶¶ 18-19, 24).

2. Between May 2003 and March 2019, Plaintiff was transferred to the Social Treatment Center for minor girls in Ponce, Puerto Rico, the Ponce Multi-Family Facility, and the Social Treatment Center in Ponce. <u>Id.</u> ¶¶ 25, 28, 31.

3. Plaintiff was also promoted to Juvenile Service Officer (2) in February 2012. <u>Id.</u> ¶ 20.

4. On March 25, 2019, Plaintiff and Officer Rumualdo Morales ("Officer Morales") were notified that they were to be transferred to the Correctional Institutional Mental Health Unit ("USMIC" for its Spanish acronym). <u>Id.</u> ¶¶ 34-35.

---

[2] The following factual allegations are derived from Plaintiff's *Complaint*, her EEOC Charge, and the Right to Sue letter. (Docket Nos. 1, 23-1, and 1-3). *See* <u>Ocasio-Hernandez</u>, 640 F.3d at 12 ("Non-conclusory factual allegations in the complaint must then be treated as true, even if seemingly incredible.").

[3] The DCR was previously known as the Juvenile Institution Administration.

5. Ms. Gallego's duties at USMIC consisted of accompanying detained minors to different health professionals and bringing them back to their modules. Id. ¶ 36.

**B. Events that occurred more than 300 days before Plaintiff filed her EEOC Charge on July 16, 2021**

6. Despite being instructed to exclusively provide duties to USMIC, Plaintiff was also assigned additional tasks in other unrelated areas, even when other people were available in those areas. Id. ¶¶ 38-40.

7. On several occasions, Ms. Gallego was assigned to two positions at the same time, even though she was not supposed to be required to relieve two positions at once. Id. ¶¶ 44-45.

8. Plaintiff claims Officer Morales was not asked or assigned to work in other areas. Id. ¶ 41.

9. Ms. Gallego felt discriminated against because of her gender as well as harassed and retaliated against. Id. ¶¶ 42-43.

10. On July 15, 2020, Ms. Gallego was summoned to a meeting in co-defendant Mildred Pérez-Santos' ("Pérez-Santos") office, where co-defendants Maritza Rodríguez-Rodríguez ("Rodríguez-Rodríguez"), Idelfonso Morales-Santiago ("Morales-Santiago"), and Marisol López-Torres ("López-Torres") were present. Id. ¶¶ 58-59. Plaintiff claims that

during the meeting, said co-defendants yelled, insulted, humiliated, mistreated, and intimidated Plaintiff as well as criticized her uniform. Id. ¶ 62.

11. Plaintiff also alleged that Rodríguez-Rodríguez and co-defendant Wilfredo Cruz-Velázquez ("Cruz-Velázquez") made untrue reports against her for alleged insubordination and other matters. Id. ¶ 63.

12. Furthermore, Plaintiff asserts that Pérez-Santos, Morales-Santiago, and López-Torres did not investigate these reports adequately. Id. ¶ 64.

13. On July 17, 2020, Plaintiff filed an internal complaint against Cruz-Velázquez because he denied her permission to take a fifteen-minute lunch break in violation of her rights under her employment agreement. Id. ¶ 66.

14. On July 15, 2020, Plaintiff attended a meeting with Pérez-Santos, Morales-Santiago, López-Torres, and Cruz-Velázquez at which Pérez-Santos stated that Plaintiff had engaged in insubordination with the different supervisors. Id. ¶ 70.

15. On July 22, 2020, Plaintiff met with officers of the DCR Ethics Division an submitted a complaint about alleged discrimination, harassment, persecution, reprisals, and a hostile work environment. Id. ¶¶ 68-69.

16. On July 29, 2020, Plaintiff was removed from the USMIC area and replaced by a male officer, Pablo Miranda.

17. That same day, Pérez-Santos disclosed Plaintiff's confidential health information without her authorization, described Plaintiff as having a mental breakdown, and stated that Plaintiff had been recently hospitalized for mental disorders. Id. ¶¶ 72-75.

18. Following these events, Plaintiff was placed on rest by a physician on July 30, 2020 and was subsequently discharged on September 1, 2020. Id. ¶ 78.

19. On September 2, 2020, Plaintiff reported for work at the Juvenile Detention Center. Id. ¶ 79.

20. Plaintiff alleges that on that day, Cruz-Velázquez instructed her to relieve the duty officer without following proper protocol, which requires the authorization of a Human Resources officer. Id. Plaintiff claims that Cruz-Velázquez became annoyed and began to mistreat her in front of other coworkers. Id. 80.

21. Plaintiff was told again that she had been removed from USMIC but was not provided a reason for the transfer. Id. ¶ 83.

22. During September 2020, Plaintiff claims she suffered "other incidents, including biological events which affected her duties and performance" at work. Id. ¶ 85.

### C. **Events that occurred within the 300 days before Plaintiff filed her EEOC Charge on July 16, 2021**

23. Plaintiff was subsequently placed on a series of medical leaves by various physicians spanning the following dates: October 10-20, 2020; October 23-November 5, 2020; November 5-10, 2020; November 13-December 11, 2020; December 11, 2020-January 11, 2021; January 11-March 31, 2021, March 31-April 4, 2021; and April 7-21, 2021 Id. ¶¶ 86-90, 93-94.

24. On March 5, 2021, Plaintiff was notified that her complaint before the Ethics division was dismissed. Id. ¶ 91.

25. Plaintiff returned to work at the Juvenile Detention Center on April 12, 2021. Id. ¶ 95.

26. On April 21, 2021, Plaintiff also returned to work at the Multifamily Division of the DCR and co-defendant Zulma Matías ("Matías") was her immediate supervisor. Id. ¶ 96.

27. On July 16, 2021, Plaintiff filed her Charge of Discrimination with the EEOC alleging discrimination based on sex and disability, as well as retaliation, occurring between July 2020 and May 2021. (Docket No. 23-1).

### D. **Events that occurred after Plaintiff filed her EEOC Charge**

28. On July 23, 2021, Matías met with Ms. Gallego to discuss complaints that she had been asleep at her post during working hours. (Docket No. 1 ¶ 98).

29. In August 2021, Matías informed Plaintiff that she would be transferred to the Tower Section of the Juvenile Detention Center. Id. ¶ 99.

30. Plaintiff was placed on another series of medical leaves by her physicians spanning the following dates: September 16-21, 2021; September 21-October 14, 2021; and October 14-November 8, 2021. Id. ¶¶ 102-04.

31. Ms. Gallego returned to work at the Tower Section on November 9, 2021. Id. ¶ 105.

32. Plaintiff was once again placed on medical leave from May 6, 2022 through August 7, 2022. Id. ¶ 107.

33. Plaintiff returned to work on August 8, 2022. Id. ¶ 108.

34. On November 30, 2022, Ms. Gallego filed a complaint with Human Resources stating that transport officials were engaging in sexual foul language and intimidating conduct, creating a hostile, abusive work environment against her person. Id. ¶ 112.

35. On December 13 and 19, 2022, Plaintiff filed internal complaints stating that co-defendant Cristian Maldonado was discriminating against Plaintiff and creating an abusive hostile work environment after he told Plaintiff that she should retire and see a doctor. Id. ¶¶ 113, 116-17.

36. Ms. Gallego claims that the hostile work environment continues to the present. Id. ¶ 120.

37. On March 2, 2023, Plaintiff received a right to sue letter from the EEOC. (Docket No. 1 at 3). Subsequently, on May 29, 2023, Plaintiff filed her present case. (Docket No. 1).

## IV.  DISCUSSION

As noted above, in her *Opposition* to the *Motion to Dismiss*, Ms. Gallego voluntarily dismissed the totality of her claims for disability discrimination under the ADA and Law 44. (Docket No. 23 at 8). Plaintiff also conceded that there is no individual liability under Title VII, Law 90, and Law 115 and that the Individual Defendants are entitled to Eleventh Amendment immunity in their official capacity. Id. at 8, 13. Lastly, Plaintiff agreed that Articles 1536 and 1538 of the Puerto Rico Civil Code are currently inapplicable. Id. at 8. Accordingly, these claims are **DISMISSED WITHOUT PREJUDICE.**

Therefore, only the following causes of action remain pending before the Court: (1) Plaintiff's claims pursuant to Title VII, 42 U.S.C. § 1981a, Law 115, and Law 90 against the DCR; and (2) Plaintiff's Puerto Rico law claims under Law 100, Law 17, and Law 69 as to both the DCR and the Individual Defendants.

The Court first addresses the federal claims. To survive a motion to dismiss, a Title VII plaintiff does "not have to plead

a full prima facie case" but rather "need only give plausible support to a minimal inference of discriminatory motivation." Vazquez-Jimenez v. Evertec Grp., LLC, 470 F. Supp. 3d 155, 158 (D.P.R. 2020) (internal citations and quotations omitted). The Court finds that Plaintiff has met this bar by establishing that she is a member of a protected class and alleging adverse employment actions that could feasibly support an inference of sex discrimination. *See* id. However, to file a suit under Title VII, a plaintiff's claims cannot be time-barred, and  they must have exhausted administrative remedies. Moreover, the First Circuit has held that generally:

> A Title VII suit may extend as far as, but not beyond, the parameters of the underlying administrative charge. This does not mean that the scope of the suit is inevitably limited to the allegations in the administrative complaint, but it is nonetheless constrained by those allegations in the sense that the judicial complaint must bear some close relation to the allegations presented to the agency.

Jorge v. Rumsfeld, 404 F.3d 556, 565 (1st Cir. 2005).

Defendants contend that the facts alleged in the *Complaint* are not closely related to the allegations made in Plaintiff's EEOC Charge. (Docket No. 29 at 4-5). Moreover, Defendants argue that Plaintiff's claims for sexual discrimination and retaliation consist solely of discrete acts that are time-barred. Id. at 6-8.

### A. Alleged Title VII violations that occurred before Plaintiff filed her EEOC Charge

A review of the *Complaint* and the EEOC Charge reveals that Plaintiff essentially articulated the same facts that allegedly occurred between March 25, 2019 and July 29, 2020 in support of her sex discrimination claim in both documents. Accordingly, the facts alleged in the *Complaint* with regards to this time period do not exceed the scope of the EEOC Charge. However, these allegedly discriminatory acts occurred before September 19, 2020, *i.e.*, **more than 300 days before Ms. Gallego filed her EEOC Charge** on July 16, 2021. For these claims to be timely, they must fall within the continuing violations doctrine and cannot be discrete acts.

The First Circuit has held that the following employment actions can constitute discrete acts pursuant to binding precedent: termination; failure to promote; refusal to hire; denial of transfer; denial of a reasonable accommodation; the failure to renew a contract; a change of supervisor; a transfer to another office, floor or area; failure to assign work to an employee; negative performance evaluations; letters of warning; reprimands; and demotions. Ayala, 780 F.3d at 57 (collecting cases). Importantly, "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act" even if the effect of the discrete act "continues to be felt by the employee"

throughout their employment. Id. at 57-8 (quoting Morgan, 536 U.S. at 113; Tobin, 553 F.3d at 132).

In the case at bar, Ms. Gallego alleges that she was: (a) assigned additional tasks in other unrelated work areas on unspecified dates; (b) assigned two positions at the same time on unspecified dates; (c) yelled at, insulted, humiliated, mistreated, intimidated, and criticized for her uniform on July 15, 2020; (e) the subject of untrue reports for alleged insubordination on an unspecified date; (f) denied permission to take her lunch break on July 17, 2020; (g) told at a meeting that she had engaged in insubordination with different supervisors on July 22, 2020; (h) removed from the USMIC area and replaced by a male officer on July 29, 2020; and (i) instructed to relieve another officer without following the proper protocol on September 2, 2020. In accordance with Ayala, the July 22, 2020 reprimand for insubordination as well as Plaintiff's removal from USMIC on July 29, 2020 and replacement with a male employee are certainly discrete acts and therefore time-barred. Given that failure to assign work to an employee can constitute a discrete act, the same could be said for assigning additional tasks beyond an employee's scope of work. *See* Rivera v. Puerto Rico Aqueduct & Sewers Auth., 331 F.3d 183, 186-89 (1st Cir. 2003).

However, even assuming *arguendo* that the remaining alleged discriminatory acts are not discrete, and were properly pleaded,

Plaintiff's allegations do not allow for the application of the continued violation doctrine. "For the continuing violation doctrine to apply, [Plaintiff] needs to establish that a discriminatory anchoring act occurred within the limitations period." Lockridge v. Univ. of Maine Sys., 597 F.3d 464, 474 (1st Cir. 2010) (internal quotation marks and citation omitted). Moreover, to qualify as an anchoring act, the discriminatory act must be substantially related to the earlier alleged incidents of discrimination. Id. An examination of the *Complaint* reveals that Plaintiff did not allege a single discriminatory act within the limitations period. During the 300 days between September 19, 2020 and July 16, 2021 (the date she filed the EEOC Charge), Plaintiff was largely absent from work on medical leave. Upon her return, the next alleged act of discrimination occurred *after* she filed her EEOC Charge. Although she was notified that her complaint before the ethics division was dismissed on March 5, 2021, said dismissal is not an adverse employment action as it did not alter the conditions of Plaintiff's employment. *See* Morales-Vallellanes, 605 F.3d at 33 (defining adverse employment actions and holding that generally, "whether an employee has suffered a materially adverse employment action capable of supporting claims under Title VII is a question of law for the court.").

In the absence of an anchoring act, the continuing violation doctrine cannot apply. Thus, all alleged acts of discrimination

occurring before the EEOC Charge was filed are time barred and hereby **DISMISSED WITH PREJUDICE.**

## B. Alleged Title VII violations that occurred after Plaintiff filed her EEOC Charge

In her *Complaint*, Ms. Gallego includes new allegations that occurred **after** she filed her EEOC Charge. Given that the claims in the EEOC Charge are time-barred, it cannot be said that these new allegations "bear some close relation to the allegations" presented to the EEOC in a timely manner. *See* Rumsfeld, 404 F.3d at 565. Even if that were not the case, these allegations consist of "new incidents" and theories of discrimination involving a distinct division of the DCR as well as different supervisors and employees, rather than a continuation of previous discriminatory patterns or retaliation for filing her EEOC Charge. *See* Clockedile v. New Hampshire Dep't of Corr., 245 F.3d 1, 4 (1st Cir. 2001). Accordingly, Plaintiff has not exhausted administrative remedies with regards to these claims. The allegations of sex discrimination in the *Complaint* that occurred after Plaintiff filed her EEOC Charge on July 16, 2021 are thus **DISMISSED WITHOUT PREJUDICE.**

## C. 42 U.S.C. § 1981a is Inapplicable

Although Defendants do not address it, Plaintiff also seeks relief pursuant to 42 U.S.C. § 1981a. Another judge in this District recently held that Section 1981a does not create an "independent cause of action[,]" but rather it "provides an

'additional remedy' for unlawful intentional discrimination under Title VII." Vazquez Lazo v. Walker, 2024 WL 3226633, at *15 (D.P.R. 2024) (quoting Pollard v. Wawa Food Mkt., 366 F. Supp. 2d 247, 251 (E.D. Pa. 2005) (finding that "the language of § 1981a indicates that the statute provides additional remedies for plaintiffs who can otherwise show violations of Title VII, but does not create a new cause of action."). In the present case, Plaintiff has not been able to timely show violations of Title VII. Therefore, Plaintiff's request for relief under Section 1981a is inapposite and is hereby **DISMISSED WITHOUT PREJUDICE.**

**D. Puerto Rico Law Claims**

First Circuit case law is clear "that district courts may decline to exercise supplemental jurisdiction over pendent state law claims when the anchor federal claims for those state law claims are dismissed." Borrás-Borrero v. Corporación del Fondo del Seguro del Estado, 958 F.3d 26, 37 (1st Cir. 2020). Where, as here, the federal claims are dismissed at an early stage of the proceedings, a District Court is well within its discretion to decline to exercise supplemental jurisdiction over pending state-law claims. *See, e.g.*, Massó-Torrellas v. Mun. of Toa Alta, 845 F.3d 461, 469-70 (1st Cir. 2017); *see also* Rivera-Diaz v. Humana Ins. of P.R., Inc., 748 F.3d 387, 392 (1st Cir. 2014) (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7, (1988)) ("[I]n the usual case in which all federal-law claims are

eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims.").

Since the totality of Plaintiff's federal claims are being dismissed at the pleading stage, the Court declines to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c). All of Ms. Gallego's supplemental claims under Puerto Rico law are hereby **DISMISSED WITHOUT PREJUDICE.**

### V.   CONCLUSION

For the foregoing reasons, Defendants' *Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)* at Docket No. 21 is hereby **GRANTED.** Judgment of dismissal with prejudice shall be entered accordingly as to Plaintiff's time-barred claims under Title VII. Judgment of dismissal without prejudice shall be entered as to the remaining claims under Title VII; Plaintiff's ADA claims; Plaintiff's request for relief under 42 U.S.C. § 1981a; and all supplemental claims under Puerto Rico law.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 5th day of September 2024.

s/Raúl M. Arias-Marxuach
UNITED STATES DISTRICT JUDGE